IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Cr. No. 26-cr-2944-MLG |
| | ) | |
| v. | ) | |
| | ) | |
| **NAOMI MARTINEZ**, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' SENTENCING MEMORANDUM AND RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

The United States respectfully submits this Response to the Defendant's Sentencing Memorandum (Doc. 34, filed October 8, 2026) and hereby requests that the Court adopt the presentence investigation report (hereinafter "PSR") (Doc. 31, filed August 18, 2026) and accept the Defendant's 11(c)(1)(C) plea agreement. Probation has properly calculated the guideline range to be 37 months to 46 months. The United States respectfully requests a sentence of 37 months which is the low end of Probation's calculated guideline range, to be followed by a term of supervised release of three years. In support, it states as follows:

## I. BACKGROUND

On January 6, 2026, law enforcement was dispatched to a mobile home in Prewitt, New Mexico for a report of a female subject assaulting a male. Upon arrival, the officers were met by an individual named Cornell Ross who directed law enforcement to the house stating a male subject, later identified as John Doe, needed an ambulance. Law enforcement saw that Ross had what appeared to be blood on his shirt. Inside the residence, the officer saw John Doe, sitting on the living room floor, with no shirt and covered in blood. A female subject, later identified as

Naomi Emma Martinez, was sitting in front of John Doe. John Doe was then immediately transported to Gallup Indian Medical Center (GIMC) for treatment for injuries to his face, neck and head including a stab wound to his right eye and cheek.

Law enforcement interviewed Ross who reported he lived in the house with his girlfriend, Carlena Martinez (Naomi Martinez' mother). He further explained that Defendant, John Doe, and their infant daughter also lived in the home and stayed on a mattress in their living room. Ross reported that night he, Defendant and John Doe were drinking heavily when Defendant became violent. Ross stated an argument started between Defendant and himself and both began pushing each other. At this point, Carlena called 911. The argument escalated and Defendant began punching John Doe in the face and kicking him causing Carlena to call 911 again. Ross then attempted to leave the trailer, but Defendant grabbed a knife and came at him. John Doe intervened to stop Defendant, but the Defendant then turned and started to stab John Doe. Ross then intervened to protect John Doe and was able to stop Defendant and grabbed the knife. Ross reported he threw the knife outside the trailer to keep it away from the Defendant. Ross retrieved the knife for law enforcement, which appeared to be a long kitchen knife with blood on it.



*Knife recovered from Crime Scene*

That night, the officer attempted to take Defendant into custody, but she became upset and began resisting. Law enforcement eventually was able to take Defendant into custody to the Crownpoint Adult Detention Center. Law enforcement learned that Defendant's and John Doe's 7-month daughter was present in the home during the incident and that Carlena had now taken custody of the child. Defendant was therefore initially charged tribally with Aggravated Battery and Endangering the Welfare of a Minor. (Government Exhibit 1).

FBI Agents searched the home and found blood in the living room, including in the area with the mattress where Defendant, John Doe and their daughter slept.




*Crime Scene Photo of Living Room*



*Crime Scene Photo of Living Room*

The night of the incident, Agents attempted to interview John Doe at the GIMC, but John Doe was intubated and unconscious. Hospital staff reported John Doe had multiple injuries to his face, head, and neck, including an injury to his eye, and an injury to his cheek that appeared to be made by a sharp object. John Doe's mother, R.B., stated John Doe remained in the hospital for four days, received stitches for his injuries, and has a permanent scar near his right eye from being stabbed.

On January 7, 2026, Agents interviewed Defendant who stated she was drinking alcohol the night of incident and she blacked out. Defendant stated she remembered John Doe gushing blood from his face, and she believed she punched him because she had blood all over her hands. Defendant admitted that her and John Doe had argued when they drank and that at times this turned physical. Defendant admitted she had previously punched John Doe in the face on at least one prior occasion.

On June 23, 2026, the Defendant pled guilty to a one-count Information. Count 1 charged Assault with a Dangerous Weapon, in violation of 18 U.S.C. § 113(a)(3), 18 U.S.C. § 1153. Defendant Martinez admitted to hitting and kicking John Doe before picking up a kitchen knife and stabbing him. Martinez admitted she intended to commit bodily harm and did so by repeatedly stabbing John Doe in the face, head, and neck with the kitchen knife.

John Doe has been uncooperative with law enforcement throughout this case and has expressed that he does not want the Defendant to face significant punishment for her actions. However, as reflected in Government Exhibit 2, John Doe does not dispute that the Defendant stabbed him on the day in question and acknowledges that she "needs help." R.B. remains concerned that John Doe continues to express a desire to maintain a relationship with the Defendant. R.B. fears that John Doe is entrenched in a cycle of domestic violence and is at risk of being harmed again. R.B. is additionally concerned for her granddaughter, who is currently residing with the Defendant's mother, fearing that she may ultimately be returned to the Defendant.

## II. ARGUMENT

A guideline sentence is necessary to ensure just punishment and deterrence in a case with these violent physical harms. The serious nature of this crime of violence requires accountability. John Doe was seriously injured by Defendant and required hospitalization. The United States seeks a sentence that is no greater than necessary to reflect the seriousness of this conduct while also recognizes the characteristics of this Defendant. A guideline sentence, of 37 months, would comport with the specific circumstances of this offense, for which the Defendant has taken accountability, while also ensuring no undue sentencing disparities.

A. *A 37-month Sentence Within the Guideline Range is Appropriate in this Case Upon Application of 18 U.S.C. § 3553(a) Factors*

The United States requests that the Court accept the PSR, adopt the factual determinations regarding Defendant's background and the circumstances of the crime, and sentence the Defendant to 37 months. A reviewing court may accord a properly calculated sentence to have a presumption of reasonableness for appellate purposes. *Rita v. United States*, 551 U.S. 338, 347 (2007). A district court, on the other hand, cannot presume reasonableness. *See Gall v. United States*, 552 U.S. 38, 50-51, 128 S.Ct. 586, (2007). In determining a sentence, the district court must conduct an analysis using both the Guidelines and the sentencing statutes. The sentencing factors in 18 U.S.C. § 3553(a), aim to "impose a sentence 'sufficient, but not greater than necessary' to comply with the purposes of sentencing." *United States v. Stepp*, 2023 WL 1966420, at *2 (D.N.M. Feb. 13, 2023) (unpublished) (quoting 18 U.S.C. § 3553(a)). Those purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
>
> 18 U.S.C. § 3553(a)(2)

A court should consider in accomplishing these purposes: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for a sentence to reflect the seriousness of the crime, deter future criminal conduct, prevent the defendant from committing more crimes, and provide rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) the Sentencing Commission's policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need for restitution. 18 U.S.C. § 3553(a).

B. *Nature and Circumstances of the Offense*

As summarized above, this case is set for sentencing on an offense of conviction that reflects extremely serious criminal conduct. The Defendant's actions are inexcusable, dangerous, and warrant just punishment despite John Doe's attempts to minimize what occurred. The Defendant used a large kitchen knife to stab her partner, John Doe, in front of her family, including their seven-month-old daughter who was inside the home. Defendant stabbed John Doe in the face and he sustained such severe injuries that he required intubation and a four-day hospitalization. Few acts demonstrate more serious violence than stabbing one's partner in the face while a child is present, causing permanent physical injury to the victim and potential psychological harm to the child.

As noted, John Doe has been uncooperative with law enforcement throughout this case, consistent with well-documented patterns of domestic-violence victims who often protect their abusers. This is evident from John Doe's multiple email to Defense Counsel claiming the Defendant was never violent, despite the Defendant's own admission that she previously struck him. Additionally, as shown in Government Exhibit 2, John Doe has conveniently relocated to Las Cruces, where the Defendant currently resides, likely reflecting ongoing influence by the Defendant. The cycle of domestic violence is complex; victims frequently deny, minimize, or rationalize abuse. According to empirical data compiled by researcher T. Handsel (2007)[1] and community resources from the National Domestic Violence Hotline[2], research consistently shows that leaving an abusive relationship is a process rather than a single event, and victims typically attempt to leave an average of 5 to 7 times before permanent separation. John Doe remains trapped

[1] Handsel, T. (2007). Predictive factors in the separation patterns of intimate partner violence victims.
[2] National Domestic Violence Hotline. (n.d.). *Why do people stay in abusive relationships?* https://www.thehotline.org.

in this cycle, which explains his request for leniency. R.B. has observed this dynamic and remains concerned, believing that a period of incarceration may give John Doe the space and safety necessary to heal and ultimately separate from the Defendant.

The nature and circumstances of this offense reveal escalating violence, disregard for the safety of the Defendant's own child, and a willingness to use severe force to dominate and intimidate John Doe. These aggravating factors demonstrate that the Defendant poses a significant risk of future harm. Violent domestic conduct—especially when weapons are involved—carries a high likelihood of recurrence without strong intervention.

Given the totality of these circumstances, a guideline sentence is not only justified but essential. The seriousness of this offense requires a response that addresses the harm inflicted, deters future violence, and protects John Doe from further abuse. A guideline sentence reflects the gravity of the Defendant's conduct and promotes respect for the law. Anything less would minimize the extensive violence committed, the trauma John Doe endured, and the lasting physical injuries he sustained. Accordingly, the nature and circumstances of this case fully support a sentence at the low end of the guideline range.

C. *History and Characteristics of the Defendant*

The United States acknowledges that the Defendant does not have a lengthy record of formal convictions and considered this fact in offering the plea and forming its sentencing recommendation. Nevertheless, the PSR makes clear that her history includes prior acts of violence against John Doe, demonstrating an ongoing and escalating pattern of domestic abuse. The present offense—a stabbing—reflects the most serious escalation to date.

The Defendant's significant alcohol abuse problem further heightens the danger she poses. She was highly intoxicated during the assault, increasing both the severity of the violence

and the likelihood that she will reoffend without substantial intervention. The United States also recognizes the Defendant's difficult childhood, which appears to include abuse by her parent; however, this acknowledgement is tempered by the unresolved concern that the Defendant has expressed no hesitation about allowing her daughter to remain in the care of that same parent, despite the alleged danger. PSR ¶ 89.

Although the Defendant is making efforts to address her alcohol use and has shown some progress, these steps do not outweigh the seriousness of her conduct or her history of violence. A relapse would place John Doe and the Defendant's family at substantial risk, particularly given her stated desire to continue her relationship with John Doe. PSR ¶ 89.

For these reasons, a low-end guideline sentence is warranted. Such a sentence appropriately reflects the gravity of the offense, the pattern of escalating violence, and the Defendant's ongoing substance abuse issues. Coupled with three years of supervised release, it provides necessary protection for the victim and the Defendant's child, while offering the Defendant the structure and oversight needed to support her rehabilitation

D. *The Need for the Sentence Imposed to Promote Respect for the Law, Provide Just Punishment, Adequate Deterrence, and to Protect the Public*

Violent crime must be deterred. As noted above, the Defendant's conduct in this case was exceptionally serious. A sentence of 37 months of imprisonment is necessary to reflect the gravity of the offense and to deter the Defendant from future substance use and violent conduct.

Moreover, the Defendant's criminal history demonstrates a troubling and escalating disregard for the safety of others. This pattern places John Doe at risk, who remains particularly vulnerable. Although John Doe does not appear to seek protection, his reluctance to cooperate in the prosecution of his perpetrator does not diminish the Court's obligation to safeguard him. To

the contrary, his continued involvement underscores the heightened need for the Court to intervene and ensure his safety.

A 37-month sentence is therefore the most effective means of preventing further harm, interrupting the Defendant's pattern of violence, and protecting both John Doe and the public. This factor strongly supports the requested sentence.

## III. CONCLUSION

The United States requests the Defendant be sentenced to a term of imprisonment of 37 months, to be followed by a term of supervised release of three years as this sentence accomplishes all the purposes of sentencing.

Respectfully submitted,

TODD BLANCHE
United States Attorney General

RYAN ELLISON
First Assistant United States Attorney

*Electronically Filed October 12, 2026*
AMY MONDRAGON
Assistant United States Attorney
201 3rd Street NW, Suite #900
Albuquerque, New Mexico 87102
(505) 224-1404

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 12, 2026, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties and counsel of record to be served, as more fully reflected on the Notice of Electronic Filing.

*/s/ Amy Mondragon*
AMY MONDRAGON
Assistant United States Attorney